Good morning, Your Honor. May it please the Court, I'm Steve Root. I'm here from OREC and I'm here on behalf of Universal Lighting Technologies, which I'll refer to this morning as ULT. The District Court in the case below made at least five separate and independent errors that require reversal of the judgment. I'm going to focus my comments this morning on three of those errors, subject to questions by the Court on the others. I'd like to focus first on the voltage source means and why the Court was wrong in reversing it. JUSTICE KENNEDY Was that disposed of all the other issues? PHILIPS ELECTRON It does, Your Honor. If we prevailed there, as I think we should, this case should be remanded for judgment, entered in favor of ULT. I also, though, would like to address the connected-to issue, which was a post-verdict claims instruction the judge issued in order to preserve a jury verdict that was not supported by the evidence. And finally, I'd like to discuss the control means and why the evidence didn't support that. JUSTICE KENNEDY You've got one issue that disposes of it. That's probably where you want to put your evidence, right? PHILIPS ELECTRON That is why I'm going to start with the means. JUSTICE KENNEDY Doesn't that invoke a presumption? That's supposed to be your argument. PHILIPS ELECTRON I'm happy to follow your argument. JUSTICE KENNEDY I'm getting you started. Let's go. PHILIPS ELECTRON There are two things the Court needs to do with this argument. First, determine whether voltage source means is controlled by Section 112, Paragraph 6. The District Court found it was not. We think it plainly was. The language of voltage source means, voltage source means providing a constant or variable magnitude DC voltage between the DC output terminals, plainly aligns with Section 112.6. It unquestionably, in the words of the statute, expresses a means for performing a specified function. As Your Honor just noted, that evokes under this Court's precedence a presumption that 112.6 controls. JUSTICE KENNEDY The only way around that, of course, in a few of our cases, Kimberly-Clark being the main one, if you can say that the means clause itself contains enough structure that we don't need to resort to the specification, you can avoid the 112.6 implications. PHILIPS ELECTRON That's correct, Your Honor. JUSTICE KENNEDY Is there any structure here? PHILIPS ELECTRON There isn't. Voltage source means does not describe a structure. It describes a means which has an adjective, voltage source. It's very comparable. JUSTICE KENNEDY Didn't the two experts on both sides testify as to the structure and what that involved? PHILIPS ELECTRON The expert, which was proffered by lighting balance control, testified that looking at that, he could figure out what the structure should be. And there are two problems with that. That doesn't say, as this Court's required in Bio Medino and in this Court's more recent decision in Noah Systems, that the language itself states structure. The fact that one of ordinary Thome art could figure out a structure is not sufficient, particularly to get out of 112.6, or once you're in 112.6 to find that the specification is sufficient. Neither expert pointed to anything in that language that they said was structure. What they said instead was, what their expert said was, if I look at this, I can figure out it probably means a rectifier. So there are two problems with that. Again, it's not set forth in the language of the claim, so it doesn't get you out of 112.6. And secondly, it's not set forth in the specification, so it doesn't meet the 112.2 indefiniteness requirements. What if the use of the word means was just a pure grafting error, and you have two experts that testify that a person that has skill in the art would look at that and say, we're talking about a rectifier? Again, the claim itself uses the term means three times. It's uncontested that the patentee used it in control means and direct current blocking means to evoke 112.6. There's no basis for saying the voltage source means was a drafting error. That's not even been argued below. Secondly, if it said voltage source, what their expert says actually is not simply that it could be a rectifier. He does say that, but they also acknowledge that a person of ordinary skill in the art, they themselves, would read the claim to also include other forms of voltage sources. A battery, a solar cell, a direct current generator. So under their reading of this claim, voltage source or voltage source means isn't a rectifier. It's a whole category. It's anything and everything that can perform the function that's recited. And that's precisely what this court said in NOAA systems and in ERGO, which also is a decision from the spring, can't be done. What if you had a situation where they use the phrase voltage source means, but really only a rectifier could satisfy that? If in fact they use means but don't use the word rectifier, would that throw out the patent? It would, Your Honor, because under this court's precedence, once you evoke 112.6 and you get the benefit of grabbing up whatever structures may perform the function, even if there's only one that's known of at the time, you've made your quid pro quo deal. You've used means and you've now claimed anything and everything whether you know about it or not. So you're saying you have to state the obvious? You have to state the obvious when you use 112.6 claiming, yes, Your Honor. But wouldn't the fact that there's only perhaps one mechanism to be the voltage source or to satisfy what the function is, wouldn't that be enough to essentially invoke the structure? I suppose you could say it is if it becomes synonymous. If in fact voltage source were somehow synonymous with rectifier, but there's no testimony to support that. Again, the testimony is that voltage source, and in this case voltage source means, could be a whole host of different structures, not just a rectifier. So if there were some way in the court's decision in which somehow a function becomes so equated with a particular structure that to say the function is to say the structure, that might pertain. But that doesn't apply here. The court said, for instance, where it's control means, even though people might generally think of a control means as evoking a controller and that's a specific structure, that's not sufficient to meet 112.6 requirements or to get out of 112.6. Because there isn't such a thing as a controller that's known and has a specific structure. Assuming that there is an invocation of 112.6, doesn't the fact that the specification repeatedly refers to power lines raise the implication that it has to be a rectifier? The specification in two places mentions power lines. Once in talking about a prior art application, not in talking about the invention at all. And a second time in column two talking about the invention, it mentioned the power line. That though is not in any way specifically linked to the voltage source means limitation. Referring to the prior art, but referring to the prior art and saying here's a, we've come up with a better way to deal with this problem. It's describing how one prior art reference laid out the prior art. It doesn't actually say that that's a limitation on this particular patent. Where it does talk about power line, it doesn't call out a rectifier. It calls out a power line. So the structure in the specification isn't rectifier, it's power line. And that power line is not linked to the voltage source means. And then finally, as we've already discussed, their experts have said, when I read this claim, I don't limit it to a power line application. I don't limit it to an AC source which is being rectified. This claim read by their expert and their patentee is a claim that reads on a whole variety of different types of sources, of different power sources, and not simply a rectifier. What are those? Any source that provides a DC current. Their expert said. Generator. Generator, battery, power cell. Batteries, solar power, hospitals always have that, right? Exactly. And at deposition. And this is why after Judge O'Connor reversed himself in December, we took their expert's deposition. And he very expansively read the claim under his one of ordinary school of the arts. He said any and everything. There are all kinds of inventions that people come up with for providing direct current. And he mentioned the ones that Your Honor just mentioned, and he said there could be lots of others. So no one has read this claim as LBC wants to now in order to try to preserve validity. No one has read it as a claim that only reads on an AC power line. That's simply the one hook they can try to come up with. And again, that hook isn't sufficient because it doesn't actually identify a structure that's being claimed here. The rectifier is something that one of ordinary skill in the art would have to come up with. Nowhere in the specification. Can a recited function ever impart structure? For example, let's say that the term voltage source alone had been used. Would that to a person with skill in the art, would they know that to mean a rectifier? No, Your Honor. And again, the testimony is clear here. None of the people who testified on this said that voltage source means rectifier. They said it could mean rectifier. That's the most common usage. The most common usage of a lighting ballast would be with the power line. And so that would be how I would see it if I had to pick one structure. But that's not what the patentee did. He claimed a much broader set of structures. By using the means language and invoking 112.6, he got a benefit. He didn't limit himself to rectifier. Is this a key component of the invention? I mean, are we about, are you suggesting throwing out an invention on something that's really not, on a component that's not integral to the invention? It is a component which is claimed in the invention. It's a component which the patentee has used and can be used to distinguish it over prior art or to limit the patent in other ways. Is it the reason why you have this invention? That certainly doesn't appear to be the key invention, but you can't claim limits and get the benefit of limits without requiring that every limit then be met to prove infringement and having a definiteness in order to have that infringement analysis done accurately to have a definite understanding of what the limitation means. My time is short. In fact, if the court has questions on anything else, I'll answer them. Otherwise, I'm going to save my remaining time for exchange. Okay, thank you. Mr. Root, Mr. Souter. May it please the court. The court should never get to the issue of vaulted-source means because they waive that issue on appeal. Jury trials are strategical, tactical decisions that you make along the way that may or may not work. Judge O'Connor carefully wrote, carefully conducted his trial, and specifically, there was an issue at the charge where Judge O'Connor asked Mr. Root, do you have any further objections in constrict compliance with Rule 51? And Mr. Root said no. Well, this is kind of the district court reversed the position it had taken earlier. This isn't an issue where usually the waiver arises where you want to give the court some notice that there is an issue. In this case, the court itself reversed itself on the issue, making it very clear it was well aware of the issue and addressed it twice. Absolutely, Your Honor. So how could there be a waiver in this situation? Because in the Fifth Circuit, the Regional Circuit, Echolab says, the Fifth Circuit, Regional Circuit Law Controls, in the in-bank decision of Jimenez, says that you do not get the benefit of relying on a futility exception to not comply with Rule 51 and objecting to the charge. They cite cases like the... What about the Creo Products case? Yes, Creo Products was a bench trial, Your Honor, and it was pre the 2003 amendments to Rule 51 out of Delaware. They cite the Cardiac case, which was a Seventh Circuit case, which specifically recognized the futility exception. If the district court knows it, just like you articulated, Judge Rader, you don't have to make it. But that is not the law in the Fifth Circuit. Jimenez is an in-bank decision which makes it crystal clear that there is no futility exception in applying Rule 51. Futility or not, compliance with Rule 51 is required to prevent full appellate review to challenge jury instructions. We're looking at a construction, a claim construction, a no-go. Correct? Yes. So it's a question of law. It is, and that's what Rule 51 talks about, Your Honor. The ULT moved for summary judgment on this, and the district court said, I'm not going to address it a third time. Absolutely. A third time. This isn't like it's a waiver. It is in the Fifth Circuit. Three times they're banging it back and forth. And it would be futile. And you're saying you have to do it a fourth. Under Fifth Circuit law, you do. Under Jimenez, the in-bank decision says that... Is this your whole case? No. No, Your Honor. That's the Harris decision. We are relying on the merits. But we think... How can you rely on the merits here? You've got presumption to overcome. You see nothing in the specification. There are at least five or six different ways you could have voltage sources. Your Honor, in the context of this patent, in the context of these claims, one skilled in the art would understand, and it's not just voltage means source, as Judge Rayner pointed out... Would one of skilled in the art know that you have to have a rectifier if you've got a generator, or if you're in a hospital, or if you're on a battery? Well, MIT says you could have a class of structures. But what is in here... The point being, one of skilled in the art would say, no, if you've got a battery, you don't need a rectifier, right? Correct. You've already got the power source. But the patent talks, not twice, but six times about a power line source. And the benefits of this invention is a power line source, and when you're dealing with an electronic lighting ballast as set forth in the preamble, and then you read this element in its entirety, not just voltage source, but a voltage source means providing a constant or variable magnitude DC voltage between the DC input terminals. Judge O'Connor found, after carefully reading the declarations of our two experts, the inventor and Dr. Roberts, that they said that this connotes structure, and that the means there is almost superfluous. As Judge O'Connor wrote, you can look at the Cole versus Kimberly-Clark case and say, take out the word means, and if you just said voltage source providing a constant or variable magnitude DC voltage for an electronic ballast with a power line source, which is talked about throughout... A perforation means is a little different from a voltage source means, isn't it? A perforation means, when you had perforations going down a line, meant there was structure, and the court found that structure. Where's the structure in voltage source means? According to the expert, it is... No, you don't get to rely on expert testimony here. Your Honor, the term... It has to be in the claim. Your Honor, on the first step... We've said that in several of our cases. Absolutely. You don't get to rely on expert testimony to fill in a structure. It's either there or it's not. Absolutely. It was there in Kimberly-Clark with the perforations. Where is it in this? Absolutely. Your Honor, it's in the use of an AC power line source. AC power line. And that's where in the claim? That is in column one, column two... No, no, no, in the claim. Oh, it's not in the claim. The structure in the claim. But that's what denotes... And if you have to go to the spec to give it to me, you have to link that specification to the claim function. Yes, yes. And to get power... So where do you say the voltage source means is and list the structures that it covers? When you're dealing with a power line and getting AC to a DC input terminal, it can only be a rectifier. That is what Dr. Roberts explained in linking. But I would take issue, Your Honor, with your statement of the law. You look to one of ordinary skill in the art on the first step of is it means plus function. All the other cases, NOAA, the parties agreed that it was 112. By the way, AC power line is not in the spec, is it? It only says power line. No, Your Honor. That power line could come from a battery. It could come from a generator. It could come in a hospital. It's always direct, right? I don't recall that you've argued AC power line. Your Honor, I believe we did. If you look at column one, the first time it uses power line, it says a device for power line voltage of 120 volts AC. And then that is the antecedent basis for the top of column two that you're talking about a power line source. So, Your Honor, I believe expert testimony of one skilled in the art is relevant on whether the claim connotes structure. That's the first step. ULT wants to immediately presuppose it's 112.6 and go to the second step, which is the NOAA case, which is very panel-decided, which was a computer-based algorithm issue. Well, they have a presumption in their favor, don't they? Yes, they do. And Judge O'Connor wrote very carefully on why he believed, based on the record and the evidence before him, and looking at unrefuted testimony. They had 19 experts. Not one refuted that this connotes a rectifier. They had Mr. Bobel's notebook, engineering notebook, which is in the record, which shows that he drew a rectifier connecting to the output source. They said that in a normal circumstance, we would anticipate a rectifier. But everybody agreed that there were alternative voltage source means that were possible, correct? Theoretically, yes. But dealing with an electronic ballast and getting AC in a home or a garage to use, they're using an electronic ballast in this courtroom, you have a voltage source, a power line source of AC, and it gets rectified or converted to DC to work on the ballast. How do you respond to the point that power line is actually only mentioned twice? It's actually six times, Your Honor. It's six times. It's in the bottom of column one, all throughout column two, and again in column 11, where it talks about after explaining the preferred embodiment, that this can be adapted to any lamp and any power line voltage magnitude, meaning any different level of AC. So how many experts then can create structure under 1 cross 6? Just one, Your Honor. Just one? Well, if the court finds it credible, it makes sense in the context, and he has carefully explained his position, then he can supply the structure. And the difference between this case and NOAA is that there is something in the spec upon which an expert can point to. Dr. Roberts said... In NOAA systems, we said very clearly that expert testimony cannot supply structure. If there is nothing of structure in the spec, but if there is something in the spec that an expert can point to... Let me quote from the case. Testimony of one of ordinary skill in the art cannot supplant the total absence of structure from the specification. Is there any structure in your specification? Yes. Where? Where does it say voltage source means is and gives the structures? It doesn't say that, Your Honor. It doesn't. That's what the absence of structure means. But, Your Honor, to one of skill in the art, what this says is that... And one of ordinary skill in the art cannot supplant the absence of structure. A total absence of structure, we agree. But we submit that there is not a total absence of structure. That to one of skill in the art that was unrefuted by every one of their experts at trial is that when it will not draw power from a power line, you're dealing with AC to DC. That that is what this invention is all about. That based on the outline above, it is highly desirable to have a ballast for gas discharge lamps which will not draw power from a power line source when their levered lamps are removed or inoperative. So why use the word means if there was not an intention to capture every possible... In hindsight, like in every patent, it was unnecessary. And that's what... But, Your Honor, we think it's a distinction without a difference because... Wait a second. Do you want hospitals to infringe? Do you want generators to infringe? Do you want solar sources to infringe? This patent? They may not. No, no, just a second. Do you assert that they do? Have you always asserted that they do? We've never asserted that they do. We've never asserted that. We said if you have an AC... If you have a ballast in a home or office that rectifies AC to DC, you meet the elements of the claim. Didn't your own inventor, though, say that he thought that it covered everything? No, he said it could. He was asked about that. He never really thought about it. Isn't that why it should be in the specification? Could it be better? Yes, Your Honor. But based on this record... Is it the court's job to correct drafting errors in the claim? No, Your Honor. In fact, we can't do that, can we? We're not English courts. English courts do that routinely. If there's a clear understanding to one of skill in the art, what this means, what this understands, then yes. Does one of skill in the art understand that you need a rectifier when you have a generator? No, but it's not about a generator. As Judge O'Connor said, it's just a rectifier because that was the only issue was that all their products used a rectifier. None of the accused products used a generator. They all were used in homes and offices getting power from an AC power line source. But again, Your Honor, this issue was not... And electricity goes out, do they have a backup generator? They might, but that's ancillary because that was not an issue in the case. I don't know. But, Your Honor, the court should never get to this issue because under Rule 51 in the Fifth Circuit, ULT had an obligation to stand up at the charge conference and say, Your Honor, it is error to submit this instruction. Did Jimenez deal with issues, circumstances other than an argument of futility based on current precedent as opposed to based on repeated rulings by the district court? No, Your Honor. The issue of controlling precedent, which is the distinction they try to make in Jimenez, was simply that was the argument that was made by the court, by Harris County, was that Harris County said, we don't have to do it because of controlling precedent. So the court answered that question, but then went on to say it's holding, and it discussed all the old Fifth Circuit cases and said those were all the pre-2003 amendments. So in response to the county's argument about controlling precedent, it answered, you don't get to argue futility, but then it goes on and says the language of Rule 51 sets forth the requirements preserving error and makes no exception for situations where objection would be futile because of controlling precedent in response to Harris County's argument. And then it says, futile or not, compliance with Rule 51 is required to preserve full appellate review of challenges to jury instructions. But the only circumstance they were talking about was the circumstance where the futility was argued based on controlling precedent rather than based on binding legal determinations already made by the district court. One could argue that Judge O'Connor's rulings were controlling precedent. They were the law of the case. Twice. You could easily fit into that hole that there was controlling precedent in our case of law of the case of controlling precedent. The point is, Fifth Circuit is unique in what it requires in objecting to the charge. That's a problem with the connected to argument, with defective. All of those arguments were not preserved for appeal. And Judge O'Connor wrote carefully on each of these issues. Thank you, Mr. Souter. Is there anything else you need to tell us here? No, Your Honor. I believe the only thing I would say is that this is a situation where the record is clear that Judge O'Connor, on all the issues on appeal, wrote very deliberatively and carefully in discussing this circuit's law, the court's law, the evidence, the record on control means, on connected to, and clearly did the right thing and gave them the opportunity to comply with Rule 51. Thank you, Mr. Souter. Mr. Ruth. First, to the point of waiver. Mr. Souter misreads Jimenez. Jimenez was an appeal from a jury instruction at which no objection was made at the jury charge conference. We're not appealing from a jury instruction. We're appealing from the court's pre-trial claim construction and refusal to grant summary judgment on... But those claim constructions, the reason for those hearings on claim construction is so they can be incorporated into the jury charge. Why isn't it, at minimum, better practice to register the objection at the time of the charge conference? One of the reasons for the claim construction is to be built into the jury charge. The other reason is to form the evidence that gets presented at trial. By the end of the trial, when we're at the jury charge conference, all the evidence has been presented. We've not presented evidence contrary to the judge's claim construction ruling on voltage source means, nor would we be permitted to. In fact, at one point where this issue came up, one of our experts made a mention of an earlier claim construction. Mr. Souter objected, the judge got upset. We can't go to trial and try the case on that alternative construction. So when you get to the charge conference, you can't make a request on that kind of a claim construction ruling for a charge that's inconsistent with how the case has been tried. Which is why the expert witnesses would not have pointed out all the alternative structures, alternative means, and would have abided by the claim construction as they were given, right? Exactly. So which is why relying on an expert witness is so faulty, in this case and any other. Yes. In addition, this court's precedent, so to Mike Rowe and other cases, made clear that where you, where you at the appropriate time make an objection to a claim construction or propose an alternative construction, which is at the Markman hearing, and here it was done at the Markman hearing, right, we didn't have a hearing. Here it was done in the Markman briefing. It was done when the judge issued its December 2nd order, and it was repeated on a motion for summary judgment when their expert gave us additional testimony. At every possible place where it was relevant, we raised the objection to what the judge, well, we raised our position on how voted source means to be construed and why it was indefinite. But we're supposed to be doing that analysis on a circuit-by-circuit basis, are we not? And oh, Mike Rowe just relied on 7th Circuit law. But again, Jimenez, Jimenez doesn't say if you don't raise an issue on a pretrial ruling, again, at the charge conference, you've waived anything. What Jimenez says is if you want to appeal a jury instruction, you need to, at the charge conference, make your objection known. That's the appropriate time at the charge conference to make something known about a jury instruction. If you have a problem with claim construction, you preserve that issue by raising it at the appropriate time on Markman. Our analysis of that waiver issue has to be under 5th Circuit law. It can be under 5th Circuit law, but again, if you read Jimenez, what's different between this case and Jimenez is what the error is that's being raised. What had to be done at the charge conference there was about jury charges. There was no appeal here on a jury charge. We're appealing the pretrial rulings. So it's a very different circumstance. It's as if we had said we didn't raise this issue in Markman because we knew what Judge O'Connor would do. We just thought it would be futile because he's a judge who doesn't do the things we want him to do. If we had done that, we would have had a waiver under Jimenez. Jimenez says make your objection at the appropriate time. For a jury charge at the charge conference, for a claim construction, it's in the Markman process, and we did that and we did it again afterwards. So there can't be a waiver here under 5th Circuit law. Jimenez does not control this issue because of the difference in the nature of our objection. Very briefly, the court has already made this point, but on the issue of whether this is 112.6 or not, the only thing the court looks to is the claim language. That does not get you out of 112.6. Whether you had enough structure in it, if you look at that reference to a power line on column 1, it's not talking about this invention. It's not even talking about the prior art invention. What it says is that if the prior art invention is made with a power line, then you'll find certain things out about the prior art. It doesn't shut down when it's supposed to. They're not limiting the prior art, much less this invention, with a reference to power line in column 1 or column 2. They're making an observation about an experiment that was done with a prior art reference. It doesn't limit it, if you'd use the direct current source anyway. Our brief at page 29 gives you the statement of their expert, Dr. Roberts, about how he, as one of ordinary skill in the art, reads Claim 1. He says, Claim 1 simply talks about DC input terminals. It doesn't care where the DC comes from, and in reality it doesn't matter. That was part of my claim construction. It's totally irrelevant where the DC comes from for the operation of the ballast. They've claimed every manner of supply of DC current. They have to give the structure that will do that, that they're limiting it to. This court under Noah has said it's not enough simply to say somebody from a world of skill in the art can figure it out. In fact, the court said it's prohibited to rely on expert testimony. That's precisely why we didn't put an expert testimony on this. The question here isn't what an expert would say, it's first what the claim language is. Final thought for us, Mr. Ruth. We do not disagree with Mr. Souter's statement that Judge O'Connor deliberated and considered these issues carefully. He got five of them wrong. It's very clear. Look at the control means, which is very similar to the argument of the court. Thank you, Mr. Ruth. Thank you.